# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

WILLIE SEAY,

        Petitioner,      :      Case No. 1:10-cv-848

- vs -

                                      Chief Judge Susan J. Dlott
                                      Magistrate Judge Michael R. Merz

Warden, Pickaway Correctional
  Institution,

        Respondent.      :

## REPORT AND RECOMMENDATIONS

Petitioner Willie Seay brought this case under 28 U.S.C. § 2254 to seek relief from his conviction and twenty-three year sentence for one count of aggravated burglary with a firearm specification, three counts of robbery, and one count of breaking and entering. He pleads the following grounds for relief:

> **Ground One:** The trial court erred to Appellant's prejudice when it entered a judgment entry of conviction and a separate sentence for aggravated robbery and robbery.
>
> **Supporting Facts:** When the trial court entered multiple convictions and separate sentences for aggravated robbery and robbery, which are allied offenses of similar import when the act involves once victim, one place, at one time, it violates Petitioner's due process and imposes a sentence contrary to law.
>
> **Ground Two:** Defendant was prejudice [sic] by a constitutional structural defect in his indictment and jury instructions for aggravated robbery and robbery.
>
> **Supporting Facts:** When the indictment and jury instructions omit

*mens rea* which is a necessary element of the offense. Appellant's constitutional due process rights to a proper grant [sic] jury indictment and jury instruction were violated.

**Ground Three:** Defendant was denied due process of law in violation of his Fifth and Fourteenth Amendments to the U.S Constitution by improper conduct of Asst. Prosecutors disclosing alleged statements of Defendant.

**Supporting Facts:** Defendant was denied due process of law by the improper conduct of the assistant prosecutors in failing to disclose to the defense the statements of defendant prior to trial to detective relating to identification of Willie Seay's voice, and by improper comments during closing arguments.

**Ground Four:** The trial court erred to the prejudice of Defendant by not excluding from evidence all reference to Defendant's cell phone records obtained by search warrant, not provided by the State to defense prior to trial upon proper filing of discovery request.

**Supporting Facts:** When the trial court does not order evidence relating to defendant's cell phone records excluded from evidence when they are not provided prior to trial, it commits prejudicial error to defendant.

**Ground Five:** Defendant was prejudice [sic] by the trial court's erroneously allowing into evidence tape recording evidence of alleged jail conversations of of [sic] Defendant.

**Supporting Facts:** When the trial court overrules defendant's objection and allow [sic] purported tape recordings of jailed defendant it commits reversible error.

**Ground Six:** The trial court erred to the prejudice of Defendant by overruling his motion to suppress identification and motion for new trial.

**Supporting Facts:** The identification evidence should have been excluded from the trial, since it resulted from illegal suggestive techniques by the police and was therefore unreliable.

**Ground Seven:** The evidence was insufficient as a matter of law and/or against the manifest weight of the evidence to sustain Defendant's conviction of aggravated burglary with specifications,

aggravated robbery with specifications, and breaking and entering.

**Supporting Facts:** When convictions for aggravated burglary with specifications, aggravated robbery with specifications, and breaking and entering are not supported by sufficient evidence and against the manifest weight of the evidence, it constitutes reversible error.

(Petitioner, Doc. No. 1, PageID 5-11.)

## Procedural History

Mr. Seay was indicted by the Hamilton County Grand Jury on September 20, 2007, for one count of aggravated burglary with two firearm specifications, three counts of aggravated robbery, three counts of robbery, and one count of breaking and entering. On Seay's motion, the breaking and entering was severed for a separate bench trial. After a jury found him guilty on the other charges, he changed his plea to guilty of breaking and entering and the trial court imposed an aggregate sentence of twenty-three years. The convictions and sentence were affirmed on direct appeal. *State v. Seay,* 2010 Ohio 896, 2010 Ohio App. Lexis 780 (1st Dist. Mar. 12, 2010). That court summarized the facts of the offenses and investigation as follows:

> [*P2] One afternoon, Latreshia Walters and Dionna Alexander were visiting Dominique Hariston at her home. They heard someone kicking the door in, and two men entered the house. The men demanded to know where in the house the money was kept.
>
> [*P3] As one man held the women at gunpoint, the other ransacked the house in an attempt to find money. During the search, the victims had an unobstructed view of the gunman for approximately ten minutes. When the search for money proved to be fruitless, the men demanded the money that the women had on their persons. The intruders left with cash and other property.
>
> [*P4] The victims called the police and gave a description of the

intruders. At some point soon after the crimes, the victims informed the police that the gunman had a noticeably red or inflamed eye.

[*P5] On the same evening as the offenses, Hariston and Walters recalled that the gunman was a person whom they had known from the Madisonville neighborhood of Cincinnati. The gunman's street name was "Ill-Wil," and the women were able to discover from Madisonville residents that his real name was Willie Seay.

[*P6] Meanwhile, soon after the home-invasion robberies, Seay was arrested on unrelated charges. When the victims learned that Seay had been arrested, Walters searched for his photograph on the Hamilton County Justice Center's Internet website. When the women saw Seay's photograph, it confirmed for them that he had been the man who had held them at gunpoint.

[*P7] Armed with this information, the victims informed the police that Seay was the gunman, and each victim identified him in a photographic lineup.

[*P8] The police secured a warrant to retrieve telephone numbers from Seay's cellular phone, which had been confiscated during his arrest. Detective Eric Karaguleff then used those numbers to record Seay's telephone calls from jail.

[*P9] Detective Karaguleff was able to identify Seay's voice in the taped telephone calls from a conversation he had had with him while Seay had been incarcerated. In the taped calls, Seay indicated his involvement in the crimes and revealed the location of the gun, which he had hidden. After the police had retrieved the gun, the victims identified it as the weapon that had been used in the offenses.

*Id.* ¶¶ 2-9. The Ohio Supreme Court declined jurisdiction over a further appeal. *State v. Seay*, 2010 Ohio 3331, 2010 Ohio LEXIS 1883 (July 21, 2010). Mr. Seay then filed the instant Petition.

## Analysis

### Ground One

In his First Ground for Relief, Seay asserts he was deprived of due process when the trial court entered judgments of conviction for both aggravated robbery and robbery, since these are allied offenses of similar import under Ohio law. In his Traverse, Seay also claims that these convictions violated his Double Jeopardy rights (Traverse, Doc. No. 18, PageID 1603).

Seay raised this claim as his First Assignment of Error on direct appeal, without mentioning the Double Jeopardy Clause. The Court of Appeals decided:

> [*P11] In his first assignment of error, Seay now argues that the trial court erred in imposing sentences for both aggravated robbery and robbery. This assignment is not well taken. Although the jury found Seay guilty of three counts of robbery, the trial court merged the offenses with the aggravated-robbery counts for purposes of sentencing. We overrule the first assignment of error.

*State v. Seay, supra*, ¶ 11.

When a state court decides the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 792 (2011); *Brown v. Payton,* 544 U.S. 133, 134 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362 (2000).

The Hamilton County Court of Appeals summarily rejected this claim on the ground that the counts which Seay argued should have been merged under Ohio Revised Code § 2941.25 (the allied

5

offenses statute) had in fact been merged by the trial court for sentencing. An examination of the face of the trial court's Judgment Entry shows that this is correct: Counts 3, 5, and 7 for robbery are "merged with another count." (Return of Writ, Ex. 16, PageID 226.)

Seay argues in response:

> In the present case, the trial court erroneously entered convictions for both aggravated robbery and robbery, as well as separated sentences which were "merged" by the trial court. Since the case involved a single act and the same victim, the offenses were allied and thus Seay should only have been convicted and sentenced for either aggravated robbery or robbery, not both. Merging the sentences does not cure the error under *State v. Harris*, Slip Opinion No. 2009-Ohio-3323, in which the Supreme Court of Ohio revered [sic].

(Traverse, Doc. No. 18, PageID 1602.)

Petitioner misunderstands the holding in *State v. Harris*, 122 Ohio St. 3d 373, 2009 Ohio 3323 (2009). In interpreting the allied offenses statute, the court held:

> Two allied offenses of similar import must be merged into a single conviction. *[State v.] Brown*, 119 Ohio St.3d 447, 2008 Ohio 4569, 895 N.E.2d 149, at P 42. In merging two allied offenses of similar import, we have held: "An accused may be *tried for both* but may be *convicted and sentenced for only one*. The choice is given to the prosecution to pursue one offense or the other, and it is plainly the intent of the General Assembly that the election may be of either offense." (Emphasis added.) *Maumee v. Geiger* (1976), 45 Ohio St.2d 238, 244, 74 O.O.2d 380, 344 N.E.2d 133.

*Id.* at ¶ 21(emphasis sic). In the very next paragraph, the court explained what is included in a judgment of conviction. The Judgment Entry in this case does precisely what the Ohio Supreme Court said should be done in *Harris*: it reflects the jury verdicts on all counts, then entered merged the robbery counts with other counts, then imposed sentence. Under Ohio law, Seay does not stand convicted of three counts of robbery. Rather, as the Judgment Entry shows, he was convicted of one count of aggravated burglary, three counts of aggravated robbery, and one count of breaking and

6

entering.

Whether a judgment entry made by an Ohio court reflects a conviction for an offense or not is a question of Ohio law on which this Court must accept the pronouncement of the Ohio courts as definitive. If Seay had been convicted of both aggravated robbery and robbery for the same act directed at the same victim, he would have a Double Jeopardy claim, but the Ohio courts have definitively said that is not what happened here. Of course, Seay never made a Double Jeopardy claim presented as a federal constitutional claim to the Ohio courts, but the Hamilton County Court of Appeals decision in this case is neither contrary to nor an objectively unreasonable application of United States Supreme Court precedent on double jeopardy issues.

Petitioner's First Ground for Relief is without merit.

## Ground Two

In his Second Ground for Relief, Seay claims his indictment was structurally defective because it did not include the required *mens rea* element and that the jury instructions also omitted that element. Seay raised this claim as his Second Assignment of Error in the Court of Appeals which decided:

> ¶ 14 In this case, the absence of mens rea allegations in the original indictment did not permeate the proceedings. Prior to trial, the state amended the indictment to include the mens rea allegations, and that amendment was proper under Crim.R. 7(D). And contrary to Seay's argument, the jury instructions also included the correct mens rea allegations and definitions. Under these circumstances, there was no structural error in the proceedings, and we overrule the second assignment of error.

*State v. Seay, supra*, ¶ 14.

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. §2254(a); *Wilson v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13; 178 L. Ed. 2d 276 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida,* 463 U.S. 939 (1983). There is no federal right to grand jury indictment in state court proceedings. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,* 408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh*, 420 U.S. 103 (1975). There is a right under the Due Process Clause of the Fourteenth Amendment to be sufficiently advised of the offense with which one is charged so as to be able to mount a defense, but here the omission of the *mens rea* element in the indictment was cured by a pre-trial amendment to add the element, as found by the Court of Appeals. Seay has no cognizable habeas corpus claim based on the absence of the *mens rea* element in the indictment as returned.

In the second part of this claim, Seay asserts the jury was improperly instructed on the *mens rea* element. The Court of Appeals summarily rejected this claim, holding that the instructions did include the correct *mens rea* element, without stating what that element was. Seay asserts that the correct *mens rea* element is recklessness (Traverse, Doc. No. 18, PageID 1604), but cites no authority for that proposition. The statutes involved here on their face purport to require a showing of a specific purpose or that the offender acted knowingly. The jury instructions are replete with references to those two *mens rea* elements (e.g., PageID 1492, 1501, 1502, 1504). The trial judge also defined what each of those mental states required at least twice (See PageID 1487 and 1495-1496). It is of course a question of state law what the required mental state must be for any offense and this Court could not substitute its determination for that of the Court of Appeals, which implicitly found that knowledge or purpose, both higher mental states than recklessness, were

8

required. As far as the constitutional claim that the jury was not instructed on the required *mens rea*, that is belied by the transcript.

The Second Ground for Relief is without merit and should be dismissed with prejudice.

### Grounds Three and Four

In his Third and Fourth Grounds for Relief, Seay argues the prosecutor committed misconduct in several respects. These claims were argued together in the Court of Appeals, which decided them as follows:

> [*P15] In his third and fourth assignments of error, Seay argues that he was denied a fair trial as a result of prosecutorial misconduct. Seay argues the assignments together, and we address them in like fashion.
>
> [*P16] Seay first contends that he was deprived of a fair trial by the state's failure to disclose that it had obtained a warrant to retrieve the contents of his cellular telephone. He argues that, had he received notice of the warrant in discovery, he would have prevailed on a motion to suppress the evidence obtained as a result of the warrant.
>
> [*P17] We find no merit in this argument. The state provided notice that it intended to use the statements Seay had made in the telephone conversations made from jail. The defense was thus provided an opportunity to challenge the propriety of the state's possession and use of those statements.
>
> [*P18] Moreover, Seay has not proffered a basis for concluding that the search warrant was invalid, and he has therefore not demonstrated any prejudice to have resulted from the failure of the state to disclose the existence of the warrant in discovery. Under these circumstances, we cannot say that the state's acts or omissions deprived Seay of a

fair trial.

[*P19] Seay next argues that the state failed to inform him of the statement he had made during the interview with Detective Karaguleff while he was incarcerated.

[*P20] Crim.R. 16(B)(1)(a)(ii) requires the state to disclose any oral statement made by the defendant to a law enforcement officer. *State v. Matthews,* 1st Dist. Nos. C-060669 and C-060692, 2007 Ohio 4881, P16.

[*P21] In this case, the record indicates that the state had made a summary of the contested statement available to Seay. In that statement, Seay merely asserted his innocence and refused further comment without the presence of an attorney. Moreover, at trial, the state did not use the statement made to Karaguleff for its contents; it was used merely to establish that Karaguleff had been able to identify Seay's voice in the taped telephone calls. Seay has thus failed to demonstrate any violation of the discovery rules.

[*P22] Seay also argues that he was unfairly prejudiced by a number of improper comments by the prosecutor during closing arguments. He argues that the prosecutor denigrated defense counsel and misstated the evidence.

[*P23] To obtain a reversal on the ground of improper remarks made during closing argument, the defendant must demonstrate not only that the comments were improper, but also that they deprived the defendant of a fair trial. *State v. Pearson* (Dec. 1, 2000), 1st Dist. No. C-990860, 2000 Ohio App. LEXIS 5573. Seay objected to only one of the comments, and we review the remainder under a plain-error standard. Under the plain-error standard, an appellate court will reverse a judgment only where the outcome clearly would have been different absent the alleged error. *State v. Miller*, 1st Dist. No. C-070691, 2008 Ohio 5899, P22.

[*P24] In this case, there was no plain error. Our review of the prosecutor's argument convinces us that the remarks were fair comments on the evidence and were not intended to denigrate the defense or to mislead the jury.

[*P25] The single remark that drew an objection was the prosecutor's statement that certain evidence missing from the state's case was "CSI stuff" that the police could not have been expected to

> produce. The trial court immediately instructed the prosecutor to "comment [on] what's in evidence." In the context of the entire proceedings, the comment was inconsequential and did not deprive Seay of a fair trial. We overrule the third and fourth assignments of error.

*State v. Seay, supra*, ¶¶ 15-25.

Seay presents a portion of these Grounds for Relief as claims under *Brady v. Maryland*, 373 U.S. 83 (1963), which recognized a constitutional right in defendants to the disclosure by the State of all material exculpatory evidence. But Seay presented this claim to the state courts as a violation of the Ohio rule for discovery in criminal cases, Ohio R. Crim. P. 16. Those two rules are not coextensive: Rule 16 requires much broader disclosure than *Brady*. Seay did not fairly present a *Brady* claim to the state courts and is barred by that procedural default from presenting it here.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F. 3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.

11

*Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963). To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506 (6th Cir. 1993); *Riggins v. McMackin,* 935 F.2d 790 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009). Because the *Brady v. Maryland* portion of these claims was not fairly presented to the state courts, it must be dismissed with prejudice.

Had the *Brady* claim been preserved, it would still have had to be dismissed as to any claim that Petitioner's own statements were not disclosed to him. *Brady* "is concerned only with cases in which the government possesses information which the defendant does not, and the government's failure to disclose the information deprives the defendant of a fair trial." *United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994). There is no *Brady* violation where the defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information or where the evidence is available to the defendant from another source. *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991). Surely a defendant must be held to have known the content of his own statements to the police.

Secondly, Seay has no colorable *Brady* claim related to the issuance of the search warrant. Search warrants are a matter of public record and Seay's counsel could have learned of it from the

Clerk of Courts. *See Storey v. Vasbinder*, ___ F.3d ___, 2011 U.S. App. LEXIS 19148 (6th Cir. Sept. 16, 2011), *citing Owens v. Guida*, 549 F.3d 399, 418 (6th Cir. 2008). As the Court of Appeals held on these claims, Seay offered no argument as to how the search warrant could have been suppressed in any event. Finally, there is no colorable claim that the results of the search warrant for the phone were exculpatory; in fact, they amounted to a confession.

Seay's underlying claim is that Detective Karaguleff's obtaining a voice sample from him was an illegal tactic and that the State should have been forced to prove it was Seay's voice on the recordings by calling a voice recognition expert. But this Court perceives no constitutional violation involved. A voice sample of this sort is no different from a blood sample or handwriting exemplar. Compelling a criminal defendant to provide such a sample does not implicate the protection against self-incrimination and here the Petitioner was not compelled.

Seay also complains of improper prosecutorial argument, listing some nine examples in his Traverse (Doc. No. 18, PageID 1608). The Court of Appeals held that there had been objection to only one of the comments – the one about "CSI stuff" - and reviewed the remainder for plain error. Ohio has a rule requiring contemporaneous objection to prosecutor's comments to preserve the issue for appeal. *State v. Glaros*, 170 Ohio St. 471(1960). That rule is an adequate and independent state ground of decision. *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). The Court of Appeals relied on that rule when it conducted only plain error review of all but one of the prosecutor's remarks. Plain error review constitutes an enforcement, not a waiver, of the contemporaneous objection rule. *Cooey v. Coyle,* 289 F.3d 882,

13

897 (6th Cir. 2002); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000). Therefore Seay's claims of prosecutorial misconduct are procedurally defaulted with the exception of the one remark on which the Court of Appeals reached the merits.

On habeas corpus review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright,* 477 U.S. 168 (1986); *Bates v. Bell*, 402 F.3d 635, 640-41 (6th Cir. 2005); *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir. 1999) or whether it was "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117 (6th Cir. 1979); *accord Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir. 1979), *aff'd sub nom*, *Watkins v. Sowders*, 449 U.S. 341 (1981); *Stumbo v. Seabold*, 704 F.2d 910 (6th Cir. 1983). The court must first decide whether the complained-of conduct was in fact improper. *Frazier v. Huffman*, 343 F.3d 780 (6th Cir. 2003), *citing United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). A four-factor test is then applicable to any conduct the Court finds inappropriate: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and whether the evidence against the defendant was strong." *Id.* The court must decide whether the prosecutor's statement likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt. *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The court must examine the fairness of the trial, not the culpability of the prosecutor. *Serra v. Michigan Department of Corrections,* 4 F.3d 1348, 1355 (6th Cir. 1993), *quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982). In *Serra*, the Sixth Circuit identified factors to be weighed in considering prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Id.,* at 1355-56, quoting *Angel*, 682 F.2d at 608. The misconduct must be so gross as probably to prejudice the defendant. *Prichett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 572 (1997); *United States v. Ashworth,* 836 F.2d 260, 267 (6th Cir. 1988). Claims of prosecutorial misconduct are reviewed deferentially on habeas review. *Thompkins v. Berghuis,* 547 F.3d 572 (6th Cir. 2008), *citing Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

Here the Court of Appeals found the comment about "CSI stuff" was inconsequential and that the trial judge had immediately instructed counsel to comment only on what was in the evidence and not on what was omitted. This Court cannot say that the Court of Appeals ruling was an objectively unreasonable application of the Supreme Court precedent on this question cited above. Particularly if the defense counsel had argued that there was reasonable doubt because the State had not produced large quantities of scientific evidence ("CSI stuff"), the comment would have been a fair response. Based on popular culture, jurors may well have an unrealistic expectation about the quantity and types of evidence available to the State.

Petitioner's Third and Fourth Grounds for Relief should be dismissed with prejudice.

**Ground Five**

In his Fifth Ground for Relief, Seay asserts the trial court violated his Due Process rights by admitting testimony of Detective Karaguleff that the voice on certain recordings was that of

15

Petitioner. Here again this claim was presented to the Hamilton County Court of Appeals which decided:

> [*P26] In his fifth assignment of error, Seay argues that the trial court erred in permitting Detective Karaguleff to identify Seay's voice on the taped telephone calls from the Hamilton County Justice Center. He argues that, absent evidence that Karaguleff was an expert in voice recognition, he was incompetent to authenticate the tapes.
>
> [*P27] This assignment is without merit. There is no requirement that a witness authenticating a voice in a taped statement be an expert in voice recognition. *See, e.g., State v. Wackenthaler*, 1st Dist. No. C-030901, 2004 Ohio 5501, P24 (evidence that police officer recognized the defendant's voice was sufficient to authenticate telephone conversation). In this case, there was evidence that Karaguleff had engaged in sufficient conversation with Seay to have recognized his voice, and we find no error in the admission of his testimony. Accordingly we overrule the fifth assignment of error.

*State v. Seay, supra,* ¶¶ 26-27.

Seay presented this claim to the state courts as a question of the witness' competence to testify, and not as a constitutional matter, so it would be appropriate to dismiss the claim on that basis. But reaching the merits of the claim, this Court concludes it does not raise constitutional issues. Detective Karaguleff did not purport to testify as an expert and there is no federal constitutional requirement that voice identification testimony be made by an expert. Seay has cited no authority to the contrary.

The Fifth Ground for Relief should be dismissed with prejudice.

### Ground Six

In his Sixth Ground for Relief, Seay claims the state courts violated his constitutional rights

by not suppressing identification testimony and by denying his motion for a new trial. The Court of Appeals decision on this claim was as follows:

> [*P28] In his sixth assignment of error, Seay contends that the trial court erred in denying his motion to suppress the victims' out-of-court identification. He argues that, because his was the only photograph to depict a person with a noticeably red eye, the identification procedure was impermissibly suggestive. He also argues that the identification procedure was flawed because the police had used the same photograph in the lineup that the victims had seen on the Justice Center's website.
>
> [*P29] To suppress identification testimony, the trial court must find that "the procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Neil v. Biggers* (1972), 409 U.S. 188, 197, 93 S.Ct. 375, 34 L. Ed. 2d 401, *quoting Simmons v. United States* (1968), 390 U.S. 377, 384, 88 S.Ct. 967, 19 L. Ed. 2d 1247; *State v. Green* (1996), 117 Ohio App.3d 644, 652, 691 N.E.2d 316. Reliability is the linchpin in determining the admissibility of identification testimony. *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L. Ed. 2d 140. Thus, even if the identification procedure was suggestive, so long as the challenged identification was reliable, it is admissible. *Id.*
>
> [*P30] In this case, the identification was reliable. The victims knew Seay from the neighborhood, and they had an unobstructed view of his face for approximately ten minutes. Each of the victims expressed complete certainty that Seay was the person who had held them at gunpoint. Accordingly, any suggestiveness in the lineup procedure was harmless, and we overrule the sixth assignment of error.

*State v. Seay, supra,* ¶¶ 28-30. The Court agrees with Petitioner that this claim was properly presented as a federal claim to the state courts. However, the state courts' decision is not an objectively unreasonable application of the cited Supreme Court precedents. The victims knew Seay from the streets and knew his street name. Rather than relying on the police investigation, they found his legal name and were thus able to assist the police in making an arrest. The victims had "an unobstructed view of [Seay's] face for ten minutes" and he had a distinctive inflamed red eye.

17

Thus even if the police identification procedure was suggestive, it is very unlikely that there was a misidentification.

Ground Six should be dismissed with prejudice.

**Ground Seven**

In his Seventh Ground for Relief, Seay contends that there was insufficient evidence to support his convictions of aggravated robbery with a firearm specification, aggravated robbery with a firearm specification, and breaking and entering. He combined this claim with a manifest weight of the evidence claim in his state court appeal. The Court of Appeals decided the Seventh Assignment of Error as follows:

> [*P33] The aggravated-burglary statute, R.C. 2911.11(A)(2), provides that "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control." R.C. 2911.01(A)(1), the aggravated-robbery statute, states that "[n]o person, in attempting or committing a theft offense * * * shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
>
> [*P34] In this case, the state presented overwhelming evidence of Seay's guilt. The state presented evidence that two men had broken into Hariston's house demanding money and that one of the men had held the victims at gunpoint before taking cash and other property. The victims were able to positively identify Seay as the gunman after having observed him for approximately ten minutes on the day of the offenses. Seay's statements recorded from the telephone calls confirmed his involvement in the crimes and led the police to the weapon used in the offenses. Although Seay points to certain alleged

18

> weaknesses in the state's case, including claimed deficiencies in the
> identification testimony, the evidence was sufficient to support the
> convictions, and we cannot say that the jury lost its way in finding
> him guilty. We overrule the seventh assignment of error.

*State v. Seay, supra*, ¶¶ 33-34.

In criticizing the evidence in his Traverse, Seay emphasizes weaknesses in the identification testimony and the lack of physical evidence. (Traverse, Doc. No. 18, PageID 1614.) Seay cannot be heard to complain of the evidence supporting the breaking and entering conviction, because he pled guilty to that offense. As to the crimes of aggravated burglary and aggravated robbery, there is no argument that these crimes did not occur; Seay merely claims that the State has not proven he was one of the perpetrators. However, the eyewitness testimony of two victims would certainly be sufficient evidence to sustain the conviction. Here there is more: Seay's admission to a third party of his involvement and police finding of the firearm at the place he said he concealed it. The state court's conclusion that there was sufficient evidence is not an objectively unreasonable application of the relevant precedent, *Jackson v. Virginia*, 443 U.S. 307 (1979).[1]

Ground Seven should be dismissed with prejudice.

## Conclusion

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Mr.

---

[1] *State v. Thompkins,* 78 Ohio St.3d 380 (1997), cited by the Court of Appeals at footnote 11, embodies the *Jackson* standard as a matter of Ohio precedent.

Seay should also be denied leave to appeal *in forma pauperis* and any requested certificate of appealability.

October 27, 2011.

s/ **Michael R. Merz**  
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).